**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| WOBBLEWORKS (HK) LIMITED,<br><br>                               Plaintiff,<br><br>        v.<br><br>UNITED STATES,<br><br>                               Defendant. | Court No. 22-00179 |

## COMPLAINT

Plaintiff, WobbleWorks (HK) Limited (hereinafter "Plaintiff" or "WobbleWorks"), by and through its undersigned counsel, hereby alleges as follows:

### JURISDICTION

1.      Plaintiff brings this civil action against Defendant the United States of America ("Defendant" or "United States") to contest the denial of an administrative protest by U.S. Customs and Border Protection ("Customs") under Section 515 of the Tariff Act of 1930, 19 U.S.C. § 1515.

### STANDING AND TIMLINESS

2.      Plaintiff is the importer of record of the merchandise involved in this action and is the party that filed the protest and underlying protested entries referenced herein.  Plaintiff, therefore, has standing in this action pursuant to 28 U.S.C. Section 2631(a).

3.      Plaintiff timely filed protest 0417-21-100360 on November 23, 2021, which was within 180 days of liquidation of each of the underlying entries, to contest the tariff classification of the imported 3Doodler pen sets and to recover duties paid for imports of such products, with interest accruals.

4.      Customs denied the protest on February 16, 2022.

5.      Plaintiff timely commenced this action by filing a summons within 180 days of the denial of the subject protest.

6.      Plaintiff paid all applicable duties, charges and exactions assessed at liquidation pertaining to the entries protested in the protest referenced herein before commencement of this action.

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a).

## STATEMENT OF FACTS

### Product Description – 3Doodler Pen Sets

8.      The subject merchandise is the 3Doodler pen sets ("3D Pen Sets").

9.      The 3D Pen Sets typically include a 3D Pen ("3D Pen"), a power adaptor, an instruction manual, a quick start guide, and packets of filaments.

10.     The 3D Pen is a hand-held "printing" pen manufactured by WobbleWorks, which operates by extruding a heated plastic strand (of different plastic types, including ABS, PLA, FLEXY, and WOOD, a wood-based plastic), which cools into a solid thread in the air, allowing for the creation of whimsical and playful three-dimensional objects. *See*, *e.g.*, https://the3doodler.com;  https://learn.the3doodler.com/resources/.



11.     The 3D Pen includes two motors, a guide tube, and a gear system, as well as a heating unit and a nozzle at the end of the tool, all encased inside an aluminum or plastic body that can be held in the hand.

12.     After plugging in and turning on the device, and setting it to the correct heat setting, a user then pushes on one of the speed buttons on the top or side surface of the device to activate the drive motor and gear system.

13.     A plastic strand (or mini spool) inserted into the back of the device is then fed by that same gear system into the device and towards the heater unit; the strand is then melted by the heater unit and extruded from the nozzle at the tip of the device.

14.     Upon extrusion, the plastic hardens, allowing the user to "draw" objects, in 3D, on a surface or in the air.

15.     Users can change speeds or stop the extrusion by pressing the buttons or sliding a switch, as applicable, on surface of the device.

16.     Users can further adjust the heat temperature setting of the device by using the switch or the control panel settings buttons on the top or side of the device.

17.     The 3D Pen Sets are predominantly intended, marketed, and used by children, teenagers, and adults for amusement purposes. *See, e.g.*, https://the3doodler.com/, https://www.youtube.com/user/3Doodler, for materials illustrating the makeup, operation, and marketing of the pens.

## Administrative History

18.     On December 18, 2013, in response to a classification ruling request from an unrelated third party, Lamrite West, Inc., Customs issued a ruling, NY N248177, which held that a

3Doodler Pen Set[1] would be dutiable under subheading 8516.79.0000, HTSUS, which provides for "[e]lectric instantaneous or storage water heaters and immersion heaters; electric space heating apparatus and soil heating apparatus; electrothermic hairdressing apparatus (for example, hair dryers, hair curlers, curling tong heaters) and hand dryers; electric flatirons; other electrothermic appliances of a kind used for domestic purposes; electric heating resistors, other than those of heading 8545; parts thereof: Other electrothermic appliances: Other."  A true and correct copy of the ruling NY N248177 is attached hereto as **Exhibit A**.

19.     Although it was the manufacturer of the 3Doodler Pen Set, WobbleWorks did not participate in drafting the ruling request that resulted in NY N248177.

20.     On October 13, 2016, WobbleWorks submitted a classification ruling request for the 3Doodler Create Pen Set (which had launched in 2015), in which it submitted that NY N248177 (Dec. 18, 2013) was incorrect, stating that the product should be classified in subheading 8467.29.0090, HTSUS, which provides for "[t]ools for working in the hand, pneumatic, hydraulic or with self-contained electric or nonelectric motor, and parts thereof: with self-contained electric motor: other, other."

21.     On January 29, 2018, Customs notified WobbleWorks that it was administratively closing WobbleWorks' October 13, 2016 ruling request in favor of the notice and comment procedure.

22.     On July 17, 2019, Customs published a notice of proposed revocation of a ruling letter and proposed revocation of treatment relating to the tariff classification of the 3Doodler Create Pen Set ("Notice"), in the Customs Bulletin and Decisions, Vol. 53, No. 24 at 9, July 17,

---

[1] Version 1 of the 3Doodler pen set, which was a precursor to the products subject to this litigation.

4

2019, for public comment.  A true and correct copy of the published Notice is attached hereto as **Exhibit B**.

23.      On July 29, 2019, WobbleWorks submitted written comments in response to the Notice.

24.      On October 7, 2019, Customs revoked the ruling NY N248177 (December 18, 2013), concluding that the 3Doodler Create Pen Set is properly classified under heading 8477, HTSUS; specifically, under subheading 8477.80.0000, HTSUS,[2] which provides for "[m]achinery for working rubber or plastics or for the manufacture of products from these materials, not specified or included elsewhere in this chapter; parts thereof: Other machinery..." A true and correct copy of HQ H293445 (October 7, 2019) is attached hereto as **Exhibit C**.

25.      WobbleWorks declared the subject entries pursuant to HQ H293445 and filed administrative protests to protect its legal claims to refunds against all imported 3D Pen Sets.

## COUNT I

26.      WobbleWorks realleges and incorporates the allegations of paragraphs 1 through 25, as if fully set forth herein.

27.      WobbleWorks asserts that Customs' classification of the 3D Pen Sets within subheading 8477.80.0000, HTSUS, at the 3.1 % rate of duty, is incorrect.

28.      For the reasons stated below, WobbleWorks asserts that the 3D Pen Sets are properly classified under subheading 9503.00.0090, HTSUS, which provides for "[t]ricycles, scooters, pedal cars and similar wheeled toys; dolls' carriages; dolls, other toys; reduced-scale

---

[2] This subheading was deleted from the HTSUS effective January 27, 2022, *see* USITC proclamation 5240.  The new subheading is 8477.80.0100, HTSUS.

("scale") models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof: Other."

29.     Classification under the HTSUS is made in accordance with the General Rules of Interpretation (GRIs).  GRI 1 provides that the classification of goods will be determined according to the terms of the headings of the tariff schedule and any relative section or chapter notes.

30.     Note 1(p) to Section XVI governs parts of Chapter 84 and provides that articles of Chapter 95 are not covered by Section XVI.  Thus, if the subject 3D Pen Sets are properly classified in Chapter 95, they are excluded from Section XVI of the HTSUS.  Because the 3D Pen Sets are properly classifiable in Chapter 95, they cannot be classified in Chapter 84.

31.     The Explanatory Notes (EN) to the Harmonized Commodity Description and Coding System represent the official interpretation of the tariff at the international level.  The ENs provide a commentary on the scope of each heading of the HTSUS and are generally indicative of the proper interpretation of these headings at the international level.  *See*, T.D. 89-80, 54 Fed. Reg. 35127, 35128 (August 23, 1989).

32.     EN 95.03 states, in pertinent part:

D)  Other toys.

This group covers **toys intended essentially for the amusement of persons (children or adults)**….

These include:

\*        \*        \*

(iii)      **Constructional toys** (construction sets, building blocks, etc.).

\*        \*        \*

(xviii)    **Educational toys** (e.g., toy chemistry, printing, sewing and knitting sets).

\*        \*        \*

6

Certain toys (e.g., electric irons, sewing machines, musical instruments, etc.) may **be capable of a limited "use";** but they are generally distinguishable by their size and limited capacity from real sewing machines, etc.

*     *     *

Collections of articles, the individual items of which if presented separately would be classified in other headings in the Nomenclature, are classified in this heading when they are put up in a form clearly indicating their use as toys (e.g., instructional toys such as chemistry, sewing, etc., sets).

(Emphasis added.)

33.    Heading 9503, HTSUS, covers all toys intended for the amusement of persons (children or adults).

34.    Additional U.S. Rule of Interpretation 1(a), HTSUS, provides that:

1.    In the absence of special language or context which otherwise requires:

(a)    a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use.

35.    The courts have stated that a good is considered a "toy" for classification purposes if it is designed and used for amusement, diversion or play, rather than practicality.  In court cases that have defined the term "toy," heading 9503 has been found to be a "principal use" provision within the meaning of Additional U.S. Rule of Interpretation 1(a), HTSUS.  *See*, e.g., *Minnetonka Brands v. United States*, 110 F. Supp. 2d 1020, 1026 (Ct. Int'l Trade 2000), in which the U.S. Court of International Trade determined that a toy must be designed and used principally for amusement.

36.     In determining whether items are principally used as toys, the following factors apply: (1) the general physical characteristics of the merchandise; (2) the expectation of the ultimate purchasers; (3) the channels, class or kind of trade in which the merchandise moves; (4) the environment of the sale (*i.e.*, accompanying accessories and the manner in which the merchandise is advertised and displayed); (5) usage, if any, in the same manner as merchandise which defines the class; (6) the economic practicality of so using the import; and (7) the recognition in the trade of the use. *United States v. Carborundum Co.*, 536 F.2d 373, 377 (1976).

37.     The *Carborundum* factors support classification of the 3D Pen Sets as a toy.

38.     The 3D Pens are not designed to create industrial projects, but rather are principally designed to entertain children and adults, are sold to schools, children, and adults, are used in craft projects, and are intended to inspire creative thinking through amusement, play, and creativity.

39.     As to their physical characteristics, the 3D Pens are generally brightly colored, easily fit the hand of a child or teenager, have buttons or slides that are positioned to allow for easier use, and generally have simplified functionality, allowing a very limited number of options and operations.

40.     3D Pens come with an activity guide and project ideas instructions. The completed projects shown on the box and in the activity guide are plainly (whimsical and playful) plastic toys, not utilitarian objects, which supports the contention that the utilitarian value of the final product made by a 3D Pen is outweighed by the amusement, diversion, or play experienced in making that product. *See*, *e.g.*, http://www.youtube.com/user/3Doodler and https://learn.the3doodler.com/resources/.

41.     The 3D Pen Sets are also sold by toy stores or in toy departments. They are sold to toy and craft buyers at Amazon, Target, and BestBuy. The full 3Doodler product line on Amazon

is managed by the toy/craft buyers. The products are also sold on the 3Doodler marketplace account, also under toy or an adjacent category (craft, hobby) in STEM toys searches.

42.     In light of the foregoing, when considering the classification of the 3D Pens, it is evident that they should be categorized as toys rather than machinery.  They are primarily designed for amusement purposes, and their intended use and functionality align more closely with toys, rather than with industrial machinery.

43.     Classifying the pens as "machinery" akin to a 3D printer tool, or even an injection molding machine, solely based on their ability to manipulate materials is erroneous, as it neglects the primary purpose and context in which these devices are intended to be used and are used by the consumers.

44.     Based on these considerations, WobbleWorks submits that the 3D Pen is properly classified as a toy in heading 9503, HTSUS; more specifically, in subheading 9503.00.0090, HTSUS.

45.     WobbleWorks submits that the 3D Pen Sets likewise should be classified as toys in subheading 9503.00.0090, HTSUS, in accordance with GRI 3(b).

46.     Note 4 to Chapter 95 provides that "heading 9503 applies, *inter alia*, to articles of this heading combined with one or more items, which cannot be considered as sets under the terms of General Interpretative Rule 3(b), and which, if presented separately, would be classified in other headings, provided the articles are put up together for retail sale and the combinations have the essential character of toys."

47.     GRI 3 provides rules for classification of goods that are *prima facie* classifiable under two or more headings.

48.     GRI 3(a) provides in part that "when two or more headings each refer . . . to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one heading gives a more precise description of the goods."

49.     GRI 3(b) states in part that "goods put up in sets for retail sale, which cannot be classified by reference to GRI 3(a), shall be classified as if they consisted of the material or component which gives them their essential character."

50.     Explanatory Note X to GRI 3(b) provides that "the term 'goods put up in sets for retail sale' shall be taken to mean goods which: (a) consist of at least two different articles, which are, *prima facie*, classifiable in different headings; (b) consist of products or articles put up together to meet a particular need or carry out a specific activity; and (c) are put up in a manner suitable for sale directly to end users without repackaging (e.g. in boxes or cases or on boards)."

51.     The 3D Pen Sets consist of different articles that are, *prima facie*, classifiable in different subheadings. The 3D Pen Sets consist of articles put up together to carry out a specific activity (*i.e.*, creation of the three-dimensional objects).  The articles are put up in a manner suitable for sale directly to end users without repacking.  Therefore, in accordance with GRI 3(b), the 3D Pen Sets should be classified as if they consisted of the component which gives them their essential character.

52.     WobbleWorks submits that the 3D Pens unquestionably provide the essential character to the 3D Pen Sets and that the 3D Pen Sets should consequently be classified in HTSUS 9503.00.0090.

53.     In accordance with law and fact, the subject merchandise is properly classified under subheading 9503.00.0090, HTSUS.

54.     The applicable rate of duty is free.

**COUNT II**

55.    WobbleWorks realleges and incorporates the allegations of paragraphs 1 through 25, as if fully set forth herein.

56.    Alternatively, WobbleWorks contends that the subject merchandise may be classified under subheading 8516.79.0000, HTSUS, which provides for "[e]lectric instantaneous or storage water heaters and immersion heaters; electric space heating apparatus and soil heating apparatus; electrothermic hairdressing apparatus (for example, hair dryers, hair curlers, curling tong heaters) and hand dryers; electric flatirons; other electrothermic appliances of a kind used for domestic purposes; electric heating resistors, other than those of heading 8545; parts thereof: other[,]" at the applicable rate of duty of 2.7 % *ad valorem*.

**COUNT III**

57.    WobbleWorks realleges and incorporates the allegations of paragraphs 1 through 25, as if fully set forth herein.

58.    Alternatively, WobbleWorks contends that the subject merchandise may be classified under subheading 8467.29.0090, HTSUS, which provides for "[t]ools for working in the hand, pneumatic, hydraulic or with self-contained electric or nonelectric motor, and parts thereof: Other: Other[,] at the applicable rate of duty of  0 % *ad valorem*.

**PRAYER FOR RELIEF**

WHEREFORE, WobbleWorks prays for the entry of a judgment:

(1)    Finding that the subject merchandise is properly classified under subheading 9503.00.0090, HTSUS (or, if applicable, under subheadings 8516.79.0000, HTSUS, or 8467.29.0090, HTSUS);

(2)      ordering Customs to reliquidate all entries which are the subject of this action and to calculate duties based on the classification of the goods as supported by the reasons set forth above;

(3)      ordering the refund to Plaintiff of all duties paid in excess, together with interest accruing thereon;

(4)      awarding Plaintiff its costs and reasonable attorney fees under the Equal Access to Justice Act and/or other applicable authorities; and

(5)      granting other relief as the Court may deem necessary and proper.

Dated: November 22, 2023

Respectfully submitted,

*/s/ Alena A. Eckhardt*
Alena A. Eckhardt

NAKACHI ECKHARDT & JACOBSON, P.C.
50 California Street, Suite 1500
San Francisco, CA 94111
(415) 498-0070
alena@tradelawcounsel.com

*Counsel for Plaintiff WobbleWorks (HK)
Limited*

# EXHIBIT A

N248177

December 18, 2013

CLA-2-85:OT:RR:NC:1:102

CATEGORY: Classification

TARIFF NO.: 8516.79.0000; 3916.90.3000

Ms. Colleen O'Shea-Moran
Darice Inc.
13000 Darice Parkway, Park 82
Strongsville, Ohio 44149

RE:  The tariff classification of a 3D drawing pen from China.

Dear Ms. O'Shea-Moran:

In your letter dated November 20, 2013, on behalf of Lamrite West Inc., you requested a tariff classification ruling.  A representative sample was submitted with your request and will be returned to you.

The product to be imported is the 3Doodler, a 3D drawing pen.  This pen comes with a power adapter, 2 packs of ABS (acrylonitrile butadiene styrene) plastic monofilaments and 2 packs of PLA (polylactic acid) plastic monofilaments.  For purposes of this reply, it is assumed that the styrene predominates by weight over each single monomer in the ABS copolymer.  Imported in various colors, these monofilaments measure approximately 3 mm in diameter and 25 cm in length.  Once the 3Doodler is heated and the monofilament is loaded into the pen, the user presses and holds down the button for the desired speed and plastic is extruded through the pen's tip.

The applicable subheading for the 3Doodler will be 8516.79.0000, Harmonized Tariff Schedule of the United States (HTSUS), which provides for electric instantaneous or storage water heaters and immersion heaters; electric space heating apparatus and soil heating apparatus; electrothermic hairdressing apparatus (for example, hair dryers, hair curlers, curling tong heaters) and hand dryers; electric flatirons; other electrothermic appliances of a kind used for domestic purposes; electric heating resistors, other than those of heading 8545; parts thereof, other electrothermic appliances, other.  The rate of duty will be 2.7 percent ad valorem.

The applicable subheading for the monofilaments, when imported separately, will be 3916.90.3000, HTSUS, which provides for monofilament of which any cross-sectional dimension exceeds 1 mm, rod, sticks, profile shapes, whether or not surface-worked but not otherwise worked, of plastics: of other plastics: other: other: monofilament.  The general rate of duty will be 6.5 percent ad valorem.

Duty rates are provided for your convenience and are subject to change.  The text of the most recent HTSUS and the accompanying duty rates are provided on World Wide Web at http://www.usitc.gov/tata/hts/.

This ruling is being issued under the provisions of Part 177 of the Customs Regulations (19 C.F.R. 177).

A copy of the ruling or the control number indicated above should be provided with the entry documents filed at the time this merchandise is imported.  If you have any questions regarding the ruling, contact National Import Specialist J. Sheridan at (646) 733-3012.

Sincerely,

Gwenn Klein Kirschner
Acting Director
National Commodity Specialist Division

**EXHIBIT B**

### PROPOSED REVOCATION OF A RULING LETTER AND PROPOSED REVOCATION OF TREATMENT RELATING TO THE TARIFF CLASSIFICATION OF THE 3DOODLER CREATE PEN SET

**AGENCY:** U.S. Customs and Border Protection, Department of Homeland Security.

**ACTION:** Notice of proposed revocation of a ruling letter and proposed revocation of treatment relating to the tariff classification of the 3Doodler Create Pen Set.

**SUMMARY:** Pursuant to section 625(c), Tariff Act of 1930 (19 U.S.C. § 1625(c)), as amended by section 623 of title VI (Customs Modernization) of the North American Free Trade Agreement Implementation Act (Pub. L. 103–182, 107 Stat. 2057), this notice advises interested parties that U.S. Customs and Border Protection (CBP) intends to revoke a ruling letter concerning tariff classification of the 3Doodler Create Pen Set under the Harmonized Tariff Schedule of the United States (HTSUS). Similarly, CBP intends to revoke any treatment previously accorded by CBP to substantially identical transactions. Comments on the correctness of the proposed actions are invited.

**DATE:** Comments must be received on or before August 16, 2019.

**ADDRESS:** Written comments are to be addressed to U.S. Customs and Border Protection, Office of Trade, Regulations and Rulings, Attention: Trade and Commercial Regulations Branch, 90 K St., NE, 10th Floor, Washington, DC 20229–1177. Submitted comments may be inspected at the address stated above during regular business hours. Arrangements to inspect submitted comments should be made in advance by calling Mr. Joseph Clark at (202) 325–0118.

**FOR FURTHER INFORMATION CONTACT:** Anthony L. Shurn, Electronics, Machinery, Automotive and International Nomenclature Branch, Regulations and Rulings, Office of Trade, at (202) 325–0218.

**SUPPLEMENTARY INFORMATION:**

### BACKGROUND

Current customs law includes two key concepts: informed compliance and shared responsibility. Accordingly, the law imposes an obligation on CBP to provide the public with information concerning the trade community's responsibilities and rights under the customs and

related laws. In addition, both the public and CBP share responsibility in carrying out import requirements. For example, under section 484 of the Tariff Act of 1930, as amended (19 U.S.C. §1484), the importer of record is responsible for using reasonable care to enter, classify and value imported merchandise, and to provide any other information necessary to enable CBP to properly assess duties, collect accurate statistics, and determine whether any other applicable legal requirement is met.

Pursuant to 19 U.S.C. §1625(c)(1), this notice advises interested parties that CBP is proposing to revoke a ruling letter pertaining to the tariff classification of the 3Doodler Create Pen Set. Although in this notice, CBP is specifically referring to NY N248177, dated December 18, 2013 (Attachment A), this notice also covers any rulings on this merchandise which may exist, but have not been specifically identified. CBP has undertaken reasonable efforts to search existing databases for rulings in addition to the ruling identified. No further rulings have been found. Any party who has received an interpretive ruling or decision (i.e., a ruling letter, internal advice memorandum or decision, or protest review decision) on the merchandise subject to this notice should advise CBP during the comment period.

Similarly, pursuant to 19 U.S.C. §1625(c)(2), CBP is proposing to revoke any treatment previously accorded by CBP to substantially identical transactions. Any person involved in substantially identical transactions should advise CBP during this comment period. An importer's failure to advise CBP of substantially identical transactions or of a specific ruling not identified in this notice may raise issues of reasonable care on the part of the importer or its agents for importations of merchandise subsequent to the effective date of the final decision on this notice.

In NY N248177, CBP classified the 3Doodler Create Pen Set in heading 8516, HTSUS, specifically in subheading 8516.79.00, HTSUS, which provides for "Electric instantaneous or storage water heaters and immersion heaters; electric space heating apparatus and soil heating apparatus; electrothermic hairdressing apparatus (for example, hair dryers, hair curlers, curling tong heaters) and hand dryers; electric flatirons; other electrothermic appliances of a kind used for domestic purposes; electric heating resistors, other than those of heading 8545; parts thereof: Other." CBP has reviewed NY N248177 and has determined the ruling letter to be in error. It is now CBP's position that the 3Doodler Create Pen Set is properly classified in heading 8477, HTSUS, specifically in subheading 8477.80.00, HTSUS, which provides for "Machinery for working rubber or plastics or

for the manufacture of products from these materials, not specified or included elsewhere in this chapter; parts thereof: Other machinery."

Pursuant to 19 U.S.C. §1625(c)(1), CBP is proposing to revoke NY N248177 and to revoke or modify any other ruling not specifically identified to reflect the analysis contained in the proposed ruling HQ H293445, set forth as Attachment B to this notice. Additionally, pursuant to 19 U.S.C. §1625(c)(2), CBP is proposing to revoke any treatment previously accorded by CBP to substantially identical transactions.

Before taking this action, consideration will be given to any written comments timely received.

Dated:  May 9, 2019

Greg Connor
*for*
Myles B. Harmon,
*Director*
*Commercial and Trade Facilitation Division*

Attachments

ATTACHMENT A

N248177

December 18, 2013

CLA–2–85:OT:RR:NC:1:102

CATEGORY: Classification

TARIFF NO.: *8516.79.0000*; *3916.90.3000*

MS. COLLEEN O'SHEA-MORAN
DARICE INC.
*13000 DARICE PARKWAY, PARK 82*
*STRONGSVILLE, OHIO 44149*

RE:   The tariff classification of a 3D drawing pen from China.

DEAR MS. O'SHEA-MORAN:

In your letter dated November 20, 2013, on behalf of Lamrite West Inc., you requested a tariff classification ruling. A representative sample was submitted with your request and will be returned to you.

The product to be imported is the 3Doodler, a 3D drawing pen. This pen comes with a power adapter, 2 packs of ABS (acrylonitrile butadiene styrene) plastic monofilaments and 2 packs of PLA (polylactic acid) plastic monofilaments. For purposes of this reply, it is assumed that the styrene predominates by weight over each single monomer in the ABS copolymer. Imported in various colors, these monofilaments measure approximately 3 mm in diameter and 25 cm in length. Once the 3Doodler is heated and the monofilament is loaded into the pen, the user presses and holds down the button for the desired speed and plastic is extruded through the pen's tip.

The applicable subheading for the 3Doodler will be *8516.79.0000*, Harmonized Tariff Schedule of the United States (HTSUS), which provides for electric instantaneous or storage water heaters and immersion heaters; electric space heating apparatus and soil heating apparatus; electrothermic hair-dressing apparatus (for example, hair dryers, hair curlers, curling tong heaters) and hand dryers; electric flatirons; other electrothermic appliances of a kind used for domestic purposes; electric heating resistors, other than those of heading 8545; parts thereof, other electrothermic appliances, other. The rate of duty will be 2.7 percent ad valorem.

The applicable subheading for the monofilaments, when imported separately, will be *3916.90.3000*, HTSUS, which provides for monofilament of which any cross-sectional dimension exceeds 1 mm, rod, sticks, profile shapes, whether or not surface-worked but not otherwise worked, of plastics: of other plastics: other: other: monofilament. The general rate of duty will be 6.5 percent ad valorem.

Duty rates are provided for your convenience and are subject to change. The text of the most recent HTSUS and the accompanying duty rates are provided on World Wide Web at http://www.usitc.gov/tata/hts/.

This ruling is being issued under the provisions of Part 177 of the Customs Regulations (19 C.F.R. 177).

A copy of the ruling or the control number indicated above should be provided with the entry documents filed at the time this merchandise is imported. If you have any questions regarding the ruling, contact National Import Specialist J. Sheridan at (646) 733–3012.

*Sincerely,*

GWENN KLEIN KIRSCHNER
*Acting Director*
*National Commodity Specialist Division*

ATTACHMENT B

HQ H293445

CLA-2 OT:RR:CTF:TCM H293445 ALS

CATEGORY: Classification

TARIFF NO.: 8477.80.00

Ms. COLLEEN O'SHEA-MORAN

DARICE INC.

*13000 DARICE PARKWAY, PARK 82*

*STRONGSVILLE, OHIO 44149*

RE:   Revocation of NY N248177 (December 18, 2013); Tariff classification of 3Doodler Create Pen Set

DEAR MS. O'SHEA-MORAN:

This letter is to inform you that we have reconsidered and revoked the above-referenced ruling. The ruling was in response to a request for such that you filed on behalf of Lamrite West, Inc. The ruling and this reconsideration addresses the legal tariff classification of 3Doodler Create Pen Set (also referred to herein as the "Create Pen").

**FACTS:**

The facts as stated in NY N248177 are as follows:

The product to be imported is the 3Doodler, a 3D drawing pen. This pen comes with a power adapter, 2 packs of ABS (acrylonitrile butadiene styrene) plastic monofilaments and 2 packs of PLA (polylactic acid) plastic monofilaments. For purposes of this reply, it is assumed that the styrene predominates by weight over each single monomer in the ABS copolymer. Imported in various colors, these monofilaments measure approximately 3 mm in diameter and 25 cm in length. Once the 3Doodler is heated and the monofilament is loaded into the pen, the user presses and holds down the button for the desired speed and plastic is extruded through the pen's tip.

Additional facts are that the Create Pen includes a mini screwdriver, a mini spanner, an unblocking tool, an instruction manual, and a quick start guide. The Create Pen is a hand-held 3-dimensional (3D) printer tool that is electrically powered. The Create Pen itself consists of two motors, a guide tube, a gear system, and a heating unit and nozzle at the end of the tool. The Create Pen has an aluminum outer shell with internal materials consisting of plastic and silicone.

The Create Pen utilizes the power adapter by connecting to one end while the other end is plugged into a wall electric outlet. A plastic strand is fed into the Pen towards the heater unit where it is melted and extruded from the Pen's nozzle. The plastic hardens upon extrusion. The effect allows the user to draw objects and shapes in 3D either on a surface or in the air. The Pen has different heat and speed settings to control the flow of the melted plastic.

In NY N248177, CBP ruled that the 3Doodler Create Pen Set is classified under subheading 8516.79.00.

**ISSUE:**

Is the 3Doodler Create Pen Set, as described above, properly classified under heading 8477, HTSUS, which provides for "Machinery for working rubber or plastics or for the manufacture of products from these materials,

not specified or included elsewhere in this chapter; parts thereof", or under heading 8516, HTSUS, which provides for "Electric instantaneous or storage water heaters and immersion heaters; electric space heating apparatus and soil heating apparatus; electrothermic hairdressing apparatus (for example, hair dryers, hair curlers, curling tong heaters) and hand dryers; electric flatirons; other electrothermic appliances of a kind used for domestic purposes; electric heating resistors, other than those of heading 8545; parts thereof"?

## LAW AND ANALYSIS:

Classification under the HTSUS is determined in accordance with the General Rules of Interpretation ("GRI") and, in the absence of special language or context which otherwise requires, by the Additional U.S. Rules of Interpretation ("ARI"). GRI 1 provides that the classification of goods shall be "determined according to the terms of the headings and any relative section or chapter notes." In the event that the goods cannot be classified solely on the basis of GRI 1, and if the headings and legal notes do not otherwise require, GRIs 2 through 6 may be applied in order.

The following headings and subheadings of the HTSUS are under consideration in this case:

| 8477 | Machinery for working rubber or plastics or for the manufacture of products from these materials, not specified or included elsewhere in this chapter; parts thereof: |
|---|---|
| 8477.80.00 | Other machinery... |

*     *     *

| 8516 | Electric instantaneous or storage water heaters and immersion heaters; electric space heating apparatus and soil heating apparatus; electrothermic hairdressing apparatus (for example, hair dryers, hair curlers, curling tong heaters) and hand dryers; electric flatirons; other electrothermic appliances of a kind used for domestic purposes; electric heating resistors, other than those of heading 8545; parts thereof: |
|---|---|
| 8516.79.00 | Other... |

The Create Pen without question works plastic to manufacture products, three-dimension objects in particular. The question is whether it is specified or included somewhere in chapter 84, HTSUS, other than heading 8477.

The Create Pen does not meet the description of any of the articles of heading 8516, HTSUS. Though it is not stated in NY N248177, we surmise from that ruling's conclusion that CBP concluded that the Create Pen fit the description of an electrothermic appliance of a kind used for domestic purposes. While it is an electrothermic device, the Create Pen cannot be said to be a domestic device. We recognize that the Create Pen may be used in a domestic environment, but it is may also be used in a commercial environment, and indeed is marketed as being suitable for domestic, commercial, and educational use. Thus, the Create Pen is not an electrothermic appliance for domestic use. Based on the foregoing, it is not classifiable as an article of heading 8516.

The Create Pen is more akin to the CreoPop 3D Printing Pen Set in CBP Ruling NY N266946 (August 18, 2015). In that ruling, CBP concluded that the CreoPop 3D Printing Pen Set is classified under heading 8477, HTSUS. Upon review of the CreoPop 3D Printing Pen Set in comparison to the subject Create Pen, we find the two articles similar enough in design and function to

find the conclusion of NY N266946 applicable to this case. Given such, we conclude that the 3Doodler Create Pen Set is properly classified under heading 8477, HTSUS. Specifically, it is classified under subheading 8477.80.00, HTSUS, which provides for "Machinery for working rubber or plastics or for the manufacture of products from these materials, not specified or included elsewhere in this chapter; parts thereof: Other machinery..."

**HOLDING:**

By application of GRI 1, the 3Doodler Create Pen Set is properly classified under heading 8477, HTSUS. Specifically, it is classified under subheading 8477.80.00, HTSUS, which provides for "Machinery for working rubber or plastics or for the manufacture of products from these materials, not specified or included elsewhere in this chapter; parts thereof: Other machinery..." The general column one rate of duty, for merchandise classified in this subheading is 3.1%.

Duty rates are provided for your convenience and subject to change. The text of the most recent HTSUS and the accompanying duty rates are provided on the World Wide Web at www.usitc.gov.

**EFFECT ON OTHER RULINGS:**

CBP Ruling NY N248177 (December 18, 2013) is hereby REVOKED.

In accordance with 19 U.S.C. §1625(c), this ruling will become effective 60 days after publication in the Customs Bulletin.

*Sincerely,*

Myles B. Harmon,
*Director*
*Commercial and Trade Facilitation Division*

# EXHIBIT C

HQ H293445

October 7, 2019

**CLA-2 OT:RR:CTF:TCM** H293445  ALS

**CATEGORY**: Classification

**TARIFF NO**.: 8477.80.00

Ms. Colleen O'Shea-Moran
Darice Inc.
13000 Darice Parkway, Park 82
Strongsville, Ohio 44149

**RE**:    Revocation of NY N248177 (December 18, 2013); Tariff classification of
3Doodler Create Pen Set

Dear Ms. O'Shea-Moran:

This letter is to inform you that we have reconsidered and revoked the above-referenced ruling.  The ruling was in response to a request for such that you filed on behalf of Lamrite West, Inc.  The ruling and this reconsideration addresses the legal tariff classification of 3Doodler Create Pen Set (also referred to herein as the "Create Pen").

Pursuant to section 625(c)(1), Tariff Act of 1930 (19 U.S.C. §1625(c)(1)), as amended by section 623 of Title VI, notice proposing to revoke NY N248177 was published on July 17, 2019, in Volume 53, Number 24 of the Customs Bulletin.  One comment was received in response to this notice, which we will address below.

**FACTS**:

The facts as stated in NY N248177 are as follows:

The product to be imported is the 3Doodler, a 3D drawing pen. This pen comes with a power adapter, 2 packs of ABS (acrylonitrile butadiene styrene) plastic monofilaments and 2 packs of PLA (polylactic acid) plastic monofilaments. For purposes of this reply, it is assumed that the styrene predominates by weight over each single monomer in the ABS copolymer. Imported in various colors, these monofilaments measure approximately 3 mm in diameter and 25 cm in

length. Once the 3Doodler is heated and the monofilament is loaded into the pen, the user presses and holds down the button for the desired speed and plastic is extruded through the pen's tip.

Additional facts are that the Create Pen includes a mini screwdriver, a mini spanner, an unblocking tool, an instruction manual, and a quick start guide. The Create Pen is a hand-held 3-dimensional (3D) printer tool that is electrically powered. The Create Pen itself consists of two motors, a guide tube, a gear system, and a heating unit and nozzle at the end of the tool. The Create Pen has an aluminum outer shell with internal materials consisting of plastic and silicone.

The Create Pen utilizes the power adapter by connecting to one end while the other end is plugged into a wall electric outlet. A plastic strand is fed into the Pen towards the heater unit where it is melted and extruded from the Pen's nozzle. The plastic hardens upon extrusion. The effect allows the user to draw objects and shapes in 3D either on a surface or in the air. The Pen has different heat and speed settings to control the flow of the melted plastic.

In NY N248177, CBP ruled that the 3Doodler Create Pen Set is classified under subheading 8516.79.00.

**ISSUE**:

Is the 3Doodler Create Pen Set, as described above, properly classified under heading 8477, HTSUS, which provides for "Machinery for working rubber or plastics or for the manufacture of products from these materials, not specified or included elsewhere in this chapter; parts thereof", or under heading 8516, HTSUS, which provides for "Electric instantaneous or storage water heaters and immersion heaters; electric space heating apparatus and soil heating apparatus; electrothermic hairdressing apparatus (for example, hair dryers, hair curlers, curling tong heaters) and hand dryers; electric flatirons; other electrothermic appliances of a kind used for domestic purposes; electric heating resistors, other than those of heading 8545; parts thereof"?

**LAW AND ANALYSIS**:

Classification under the HTSUS is determined in accordance with the General Rules of Interpretation ("GRI") and, in the absence of special language or context which otherwise requires, by the Additional U.S. Rules of Interpretation ("ARI"). GRI 1 provides that the classification of goods shall be "determined according to the terms of the headings and any relative section or chapter notes." In the event that the goods cannot be classified solely on the basis of GRI 1, and if the headings and legal notes do not otherwise require, GRIs 2 through 6 may be applied in order.

The following headings and subheadings of the HTSUS are under consideration in this case:

8477    Machinery for working rubber or plastics or for the manufacture of products from these materials, not specified or included elsewhere in this chapter; parts thereof:

8477.80.00      Other machinery...

*          *          *

8516    Electric instantaneous or storage water heaters and immersion heaters; electric space heating apparatus and soil heating apparatus; electrothermic hairdressing apparatus (for example, hair dryers, hair curlers, curling tong heaters) and hand dryers; electric flatirons; other electrothermic appliances of a kind used for domestic purposes; electric heating resistors, other than those of heading 8545; parts thereof:

8516.79.00      Other...

*          *          *          *          *          *

The Harmonized Commodity Description and Coding System Explanatory Notes (ENs) constitute the official interpretation of the Harmonized System.  While not legally binding on the contracting parties, and therefore not dispositive, the ENs provide a commentary on the scope of each heading of the Harmonized System and are thus useful in ascertaining the classification of merchandise under the System.  Customs believes the ENs should always be consulted.  See T.D. 89-80, 54 Fed. Reg. 35127, 35128 (Aug. 23, 1989).

The Create Pen without question works plastic to manufacture products, three-dimensional objects in particular.  The question is whether it is specified or included somewhere in chapter 84, HTSUS, other than heading 8477.

The Create Pen does not meet the description of any of the articles of heading 8516, HTSUS.  Though it is not stated in NY N248177, we surmise from that ruling's conclusion that CBP concluded that the Create Pen fit the description of an electrothermic appliance of a kind used for domestic purposes.  While it is an electrothermic device, the Create Pen cannot be said to be a domestic device.  We recognize that the Create Pen may be used in a domestic environment, but it is may also be used in a commercial environment, and indeed is marketed as being suitable for domestic, commercial, and educational use.  Thus, the Create Pen is not an electrothermic appliance for domestic use.  Based on the foregoing, it is not classifiable as an article of heading 8516.

The Create Pen is more akin to the CreoPop 3D Printing Pen Set in CBP Ruling NY N266946 (August 18, 2015).  In that ruling, CBP concluded that the CreoPop 3D Printing Pen Set is classified under heading 8477, HTSUS.  Upon review of the CreoPop 3D Printing Pen Set in comparison to the subject Create Pen, we find the two articles similar enough in design and function to find the conclusion of NY N266946 applicable to this case.

As noted above, we received one comment in response to the notice of the proposed revocation.  The commenter contends that the Create Pen is properly classified under heading 8467, HTSUS, which provides for "tools for working in the hand, pneumatic, hydraulic or with self-contained electric or nonelectric motor... The commenter argues that the Create Pen is a handheld device that contains an electric motor, and therefore is classifiable under 8467.  The ENs to heading 8467 list various methods of working materials, including drilling, tapping, reaming, boring, wrenching,

-3-

screwing, gauging, surfacing, filing, grinding, sanding, and polishing.   A common characteristic among these methods is that they alter the composition of the material being worked, whether by making a hole, insert a screw, or removing a top layer, for instance.  The Create Pen is distinguished from the tools that perform the tasks noted in the EN for 8467 in that it extrudes the material being worked from its housing, but it does not alter its composition except to establish its initial form to create three-dimensional objects.

The commenter cited numerous cases, arguing that they are examples of articles similar to the Create Pen that CBP classified under heading 8467.  Just as the working methods noted in EN 8467 are distinguished from the function of the subject Create Pen, so are the cases that the commenter cited.  The articles in the cited cases all work materials in a similar fashion to the methods noted in EN 8467 (NY N289201-gluing; NY N275980-picking; NY N258238-styling; NY N250886-polishing; NY N189023-engraving; NY N097295-caulking;  NY  N056449-tattooing;  NY  N054523-drilling;  HQ  H017695-drilling and snaking; HQ H017694-drilling; NY N009242-tying or wrapping; NY M80652-polishing; NY J82209-cleaning; and NY H86274-carving).

Given such, we conclude that the 3Doodler Create Pen Set is properly classified under heading 8477, HTSUS.  Specifically, it is classified under subheading 8477.80.00, HTSUS,  which  provides  for  "Machinery  for  working  rubber  or  plastics  or  for  the manufacture of products from these materials, not specified or included elsewhere in this chapter; parts thereof: Other machinery..."

**HOLDING**:

By application of GRI 1, the 3Doodler Create Pen Set is properly classified under heading 8477, HTSUS.   Specifically,  it  is  classified  under  subheading  8477.80.00, HTSUS,  which  provides  for  "Machinery  for  working  rubber  or  plastics  or  for  the manufacture of products from these materials, not specified or included elsewhere in this chapter; parts thereof: Other machinery..."  The general column one rate of duty, for merchandise classified in this subheading is 3.1%.

Duty rates are provided for your convenience and subject to change. The text of the most recent HTSUS and the accompanying duty rates are provided on the World Wide Web at www.usitc.gov.

**EFFECT ON OTHER RULINGS:**

CBP Ruling NY N248177 (December 18, 2013) is hereby REVOKED.

In accordance with 19 U.S.C. §1625(c), this ruling will become effective 60 days after publication in the Customs Bulletin.

Sincerely,

Myles B. Harmon, Director
Commercial and Trade Facilitation Division